IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SHELTER LIFE INSURANCE COMPANY**                                   **PLAINTIFF**

**V.**                          **CASE NO. 4:12CV00098 BSM**

**CHRISTINE MECHAM**                                                **DEFENDANT**

**V.**

**RYAN WEBB**                                                        **INTERVENOR**

### STATEMENT OF UNDISPUTED, MATERIAL FACTS
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Christine Mecham submits the following Statement of Undisputed, Material Facts in Support of Motion for Summary Judgment:

1. Shelter Life Insurance Company ("Shelter") has filed an interpleader action regarding two insurance policies it issued on the life of Steve Henderson. Shelter originally named as parties Gail Williams, the sister of its insured, Steven Henderson, and Christine Mecham, who was the named beneficiary of Mr. Henderson's life insurance policies. Ms. Williams was later dismissed from the case, and the original beneficiary, Ryan Webb, intervened, claiming that he is entitled to the proceeds. See Complaint, Doc. No. 1; Motion to Intervene, Doc. No. 11; Order Granting Motion to Intervene, Doc. No. 12.

2. Steve Henderson was a quadriplegic with limited use of his arms and hands. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 20.

3. Although he was a quadriplegic, Mr. Henderson did have the ability to write with the aid of a brace. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 20 and Exhibit 1-A; Exhibit 2, Deposition of Gail Williams, at p. 56, lines 1-6.

4. Mr. Henderson sometimes required and sometimes requested that other people sign his name to certain documents. See Exhibit 1, Affidavit of Christine Mecham at ¶ 21; Exhibit 2, Deposition of Gail Williams, at p. 54, lines 1-3; Exhibit 5, Deposition of Alan Williams, at p. 32, lines 18-21.

5. Mr. Henderson became a quadriplegic in the 1970s. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 8.

6. In 2007, Mr. Henderson approached his nephew, Ryan Webb, about purchasing life insurance from Shelter. See Exhibit 3, Deposition of Ryan Webb, at p. 22, lines 2-17.

7. Mr. Webb sold insurance for Shelter. See Exhibit 3, Deposition of Ryan Webb, at p. 22, lines 2-17.

8. Mr. Henderson purchased two policies, totaling $150,000, from Mr. Webb. See Exhibit 3, Deposition of Ryan Webb, at p. 22, lines 15-24; Exhibit 4, Life Insurance Policies.

9. In 2006, Christine Mecham and her husband George purchased property in Arkansas to build a vacation home. The Mechams purchased approximately 50 acres near Leslie, Arkansas, next to a vacation home owned by their neighbor in Florida. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 3.

10. Their neighbor recommended using Mr. Henderson as a general contractor. Mr. Henderson acted as the general contractor on the Mechams' neighbor's house in Arkansas. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 5.

11. The Mechams hired Mr. Henderson as their general contractor in 2006, and construction on their house began at that time. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 5-7.

12. The Mechams and Mr. Henderson became close friends during the construction of their vacation home. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 7.

13. Ms. Mecham and Mr. Henderson developed a close friendship, and Mr. Henderson developed a close bond with Ms. Mecham's son, Hugh Adcock. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 9-11.

14. Ms. Mecham had a cousin who, like Mr. Henderson, was a quadriplegic, and she knew and appreciated the struggles Mr. Henderson endured as a quadriplegic with limited use of his arms and hands. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 8.

15. Over the next several years, Mr. Henderson and Ms. Mecham became very close friends. They would often visit by telephone, and they spent time together when Ms. Mecham and her family were in Arkansas. Ms. Mecham has testified that she and Mr. Henderson loved each other as close friends. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 9-11.

16.     Ms. Mecham and Mr. Henderson's family also became close over the years, particularly Mr. Henderson's sister, Gail Williams. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 12-13.

17.     Ms. Williams' husband, Alan, and Ms. Mecham's son, Hugh, were especially close. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 13; Exhibit 2, Deposition of Gail Williams, at p. 66, line 25 to p. 67, line 2.

18.     Hugh and Mr. Williams would fix cars together and generally spend quality time with each other. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 13.

19.     Hugh and Mr. Henderson would also spend a great deal of time together when Hugh was in Arkansas. Mr. Henderson had a bedroom reserved just for Hugh. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 11.

20.     In 2008, Mr. Henderson requested that Shelter send him forms to change the beneficiary of his life insurance policy. See Exhibit 6, Deposition of Toni Swiney, at p. 12, line 21 to p. 14, line 10 and p. 19, lines 2-13; Exhibit 7, Change of Beneficiary Forms.

21.     On June 25 2008, Shelter mailed two change of beneficiary forms to Mr. Henderson's address in Mountain View, Arkansas. See Exhibit 6, Deposition of Toni Swiney, at p. 12, line 21 to p. 14, line 10 and p. 19, lines 2-13; Exhibit 7, Change of Beneficiary Forms; Exhibit 8, Correspondence to Steve Henderson dated June 25, 2008.

22.     Mr. Henderson filled out the forms, naming Christine Mecham as the beneficiary of his life insurance policies. See Exhibit 6, Deposition of Toni Swiney, at p. 17, line 13 to p. 18, line 3; Exhibit 7, Change of Beneficiary Forms.

4

23. Mr. Henderson mailed the forms back to Shelter. Exhibit 7, Change of Beneficiary Forms.

24. On July 14, 2008, Shelter mailed a confirmation letter to Mr. Henderson, including with it the change of beneficiary forms Mr. Henderson executed. See Exhibit 6, Deposition of Toni Swiney, at p. 16, lines 1-19 and p. 20, lines 10-23; Exhibit 9, Correspondence to Steve Henderson dated July 14, 2008.

25. Teri Swiney was the Life Specialist with Shelter who handled the change of beneficiary requests. See Exhibit 6, Deposition of Toni Swiney, at p. 11, lines 13-23.

26. Ms. Swiney gave her deposition in this matter on May 1, 2013, nearly five years after the change of beneficiary forms were prepared, and she did not specifically recall every detail of her conversation with Mr. Henderson. See Exhibit 6, Deposition of Toni Swiney, at p. 10, lines 10-21.

27. Ms. Swiney testified that she received a call from Mr. Henderson, and she verified his identity. See Exhibit 6, Deposition of Toni Swiney, at p. 14, line 24 to p. 15, line 3 and p. 20, line 24 to p. 21, line 2.

28. Ms. Swiney wrote the June 25, 2008 letters to Steve Henderson regarding changing the beneficiary of his life insurance policies. See Exhibit 6, Deposition of Toni Swiney, at p. 12, lines 1-22 and p. 19, lines 11-13.

29. Following her conversation with Mr. Henderson, Ms. Swiney handwrote the policy number and Mr. Henderson's name on the change of beneficiary forms. See Exhibit 6, Deposition of Toni Swiney, at p. 13, lines 8-10.

30. Ms. Swiney handwrote "do not mail to agent" "did not mail to agent" and "agent did not get this" on the copies of her letters to Mr. Henderson and on the change of beneficiary forms at the request of Mr. Henderson. See Exhibit 6, Deposition of Toni Swiney, at p. 14, lines 8-13 and p. 16 line 9 to p. 17, line 12.

31. It is Shelter's policy to mail changes of beneficiaries to the agent, unless specifically directed not to mail them by the policyholder. See Exhibit 6, Deposition of Toni Swiney, at p. 14, lines 16-23.

32. Mr. Henderson could qualify for Medicaid or other state assistance, depending on the amount of property he owned. Ms. Williams ultimately received over $13,000 from Medicaid for allowing her brother to live with her in 2010. See Exhibit 3, Deposition of Ryan Webb, at p. 25, line 19 to p. 26, line 3; Exhibit 11, Deposition of Everett Saddler, at p. 35, lines 1-4; Exhibit 10, Letter from Arkansas Department of Human Services to John Aldworth dated September 27, 2012.

33. In order to become Medicaid eligible, in 2009, Mr. Henderson quitclaimed the real property he owned, other than his house, to his neighbor Everett Saddler. Those deeds were notarized by Ryan Webb. See Exhibit 11, Deposition of Everett Saddler, at p. 31, line 16 to p. 32, line 25; Exhibit 12, Quitclaim Deeds.

34. Ms. Williams asked Mr. Webb if Mr. Henderson had any life insurance, because she understood that this information was also needed for Medicaid eligibility or other state assistance. See Exhibit 3, Deposition of Ryan Webb, at p. 25, lines 6-23; Exhibit 2, Deposition of Gail Williams, at p. 69, lines 18-23

35. In 2009, Mr. Webb, who was still employed by Shelter, obtained a copy of Mr. Henderson's policy and the change of beneficiary forms, which now showed Ms. Mecham as the beneficiary of Mr. Henderson's life insurance policies. See Exhibit 3, Deposition of Ryan Webb, at p. 26, line 18 to p. 28, line 4.

36. Mr. Webb informed Ms. Williams that the beneficiary of Mr. Henderson's life insurance policies had been changed. See Exhibit 2, Deposition of Gail Williams, at p. 68, lines 20-25.

37. Neither Mr. Webb nor Ms. Williams (or any other family member of Mr. Henderson) ever questioned Mr. Henderson regarding the change of beneficiary. See Exhibit 3, Deposition of Ryan Webb, at p. 28, lines 5-6 and p. 29, lines 9-24; Exhibit 2, Deposition of Gail Williams, at p. 69, line 25 to p. 72, line2; Exhibit 13, Deposition of Debbie Webb, at p. 20, line 14 to p. 21, line 4.

38 Mr. Webb witnessed Mr. Henderson's signature on the original applications for life insurance. See Exhibit 14, Applications for Insurance.

39. Ms. Mecham was unaware that Mr. Henderson had life insurance and that he named her as the beneficiary of his life insurance until 2010 and 2011. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 15.

40. In late 2010, Mr. Henderson informed Ms. Mecham that he had life insurance and that he had decided to "leave everything" to Ms. Mecham. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 15.

41. Ms. Mecham did not know that Mr. Henderson had life insurance or that he had named her as the beneficiary of his life insurance policies before this. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 15.

42. Also in late 2010, Mr. Henderson contacted his nephew, Tyler Henderson, who was then in law school about assisting Mr. Henderson with preparing a will. See Exhibit 15, Affidavit of J. Tyler Henderson, at ¶ 5.

43. Like his conversation with Ms. Mecham, Mr. Henderson told his nephew that he intended to leave everything to Ms. Mecham. See Exhibit 15, Affidavit of J. Tyler Henderson, at ¶ 6.

44. Tyler Henderson told his uncle that he could not help him until he became a licensed attorney. See Exhibit 15, Affidavit of J. Tyler Henderson, at ¶ 7.

45. Because Tyler Henderson was unavailable to assist Mr. Henderson in preparing a will, Mr. Henderson prepared his own will with the assistance of his caretaker, Sherry Williams. See Exhibit 16, Affidavit of Sherry Williams, at ¶ 5-11.

46. Sherry Williams was one of Mr. Henderson's health care assistants from 2007 until August 2011, at which time her daughter took over caring for Mr. Henderson. See Exhibit 16, Affidavit of Sherry Williams, at ¶ 1, 4.

47. In August 2011, Sherry Williams, at Mr. Henderson' request, emailed Mr. Henderson a "blank" will. See Exhibit 16, Affidavit of Sherry Williams, at ¶ 6-7.

48. At Mr. Henderson's direction and following his instructions, Sherry Williams filled in the blanks on the will. See Exhibit 16, Affidavit of Sherry Williams, at ¶10.

49. Mr. Henderson emphatically stated to Sherry Williams that it was his intention and desire that "all of his property" be left to Ms. Mecham. He named her as the beneficiary and executrix of his estate. He told Ms. Williams that he had named Ms. Mecham as the beneficiary of his life insurance policies, and that it was his intention that Ms. Mecham should receive the proceeds of Mr. Henderson's life insurance. He also named Ms. Mecham as his power of attorney. See Exhibit 16, Affidavit of Sherry Williams, at ¶ 12-14.

50. Mr. Henderson's nephew, Tyler Henderson, has also testified in his affidavit that Mr. Henderson's intention was to leave Ms. Mecham "everything" and Mr. Henderson's changing the beneficiary of his life insurance to Ms. Mecham was consistent with his intentions. See Exhibit 15, Affidavit of J. Tyler Henderson, at ¶ 10.

51. Mr. Webb has identified three people with knowledge of his claims and defenses, other than the Mecham family. Those three individuals are Ryan Webb, Gail Williams, and Alan Williams. In addition, Mr. Webb has indicated that he plans to call Everett Saddler, Mr. Henderson's friend and neighbor, as a witness. See Exhibit 17, Ryan Webb's Mandatory Disclosures.

52. Mr. Henderson did not have a close relationship with either of his sisters, which bothered Steve at times. See Exhibit 11, Deposition of Everett Saddler, at p. 21, lines 6-12 and p. 23, lines 10-13; Exhibit 15, Affidavit of Tyler Henderson, at ¶ 10.

53. Mr. Henderson's sister Gail Williams lived across the street from Mr. Henderson. See Exhibit 11, Deposition of Everett Saddler, at p. 30, line 7-8.

54. Mr. Saddler and his wife would often take Mr. Henderson food on holidays so that he would not have to spend that time alone in his house. See Exhibit 11, Deposition of Everett Saddler, at p. 23, lines 14-19.

55. Mr. Henderson's health took a turn for the worse in late 2011. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 22, 24.

56. He was hospitalized on December 2011, for an infection, and he suffered a stroke a few days later. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 24.

57. It was while Mr. Henderson was hospitalized that his sisters learned that he had given a power of attorney to Ms. Mecham in 2011. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 25.

58. Ms. Mecham, acting as Mr. Henderson's attorney in fact, desired to prolong his life to see if there was anything more that could be done to save him. Mr. Henderson's sisters did not want to prolong Mr. Henderson's life. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 26.

59. Due in large part to their disagreements over the handling of Mr. Henderson's final days, Ms. Mecham's relationship with Mr. Henderson's sisters, particularly Gail Williams, deteriorated. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 26

60. Mr. Henderson died on December 29, 2011. Ms. Mecham paid for the funeral out of her personal funds. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 27; Exhibit 2, Deposition of Gail Williams, at p. 49, lines 7-8.

61. Two business days later, Ryan Webb called Shelter to report Mr. Henderson's death and to confirm that the beneficiary under Mr. Henderson's life insurance policy was Ms. Mecham. He reported that the family was "upset" because Mr. Henderson had changed the beneficiary to Ms. Mecham. See Exhibit 18, Call Logs Produced by Shelter.

62. Two days later, Ms. Williams called Shelter and reported that she believed the change of beneficiary forms were forged and that Ms. Mecham had taken "advantage of her brother." See Exhibit 18, Call Logs Produced by Shelter.

63. Although she knew that Mr. Henderson had a will and had named Ms. Mecham as the executrix and beneficiary of his estate, Ms. Williams nevertheless filed a petition to probate Mr. Henderson's estate in an effort to obtain standing to challenge Ms. Mecham's status as beneficiary of Mr. Henderson's life insurance policies. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 28-29. See Exhibit 2, Deposition of Gail Williams, at p.70, line 21 to p.71, line 11.

64. Ms. Mecham filed an action to probate Mr. Henderson's will, and the Stone County Probate Court granted Ms. Mecham's petition, finding that the will had not been forged. See Exhibit 1, Affidavit of Christine Mecham, at ¶ 29 and Exhibit 1-B.

65. In the course of this case, Mr. Webb's attorney hired a purported handwriting expert, Dawn Reed. See Exhibit 3, Deposition of Ryan Webb at p. 32, line 22 to p. 33, line 7.

66. Ms. Reed has stated in her reports that she believes that Mr. Henderson's signature on the change of beneficiary forms was a "simulation." See Exhibit 19, Report and Supplemental Report of Dawn Reed.

67. Ms. Reed used "known" handwriting samples of Mr. Henderson to compare to the questioned change of beneficiary form signatures. See Exhibit 19, Report and Supplemental Report of Dawn Reed.

68. Ms. Reed obtained the "known" samples from Gail Williams, who represents that she can recognize documents signed by Mr. Henderson and distinguish those documents that he signed from those documents that were signed by others at his request. See Exhibit 2, Deposition of Gail Williams, at p. 90, line 22 to p. 92, line 24.

69. During her deposition, Ms. Williams was shown a change of beneficiary form and was asked to compare it to Mr. Henderson's signature on the original application, which nobody disputes is Mr. Henderson's signature. See Exhibit 2, Deposition of Gail Williams, at p. 128, line 14 to p. 129, line 9 and Exhibits 4 and 7 to Ms. Williams' Deposition.

70. Ms. Williams testified that the signature on the change of beneficiary form was the same as the signature on the original application. See Exhibit 2, Deposition of Gail Williams at p. 128, line 14 to p. 129, line 9.

71. Ms. Mecham never asked Mr. Henderson whether he had life insurance. See Exhibit 1, Affidavit of Christine Mecham at ¶ 16.

72. Ms. Mecham did not know that Mr. Henderson had life insurance in 2008. See Exhibit 1, Affidavit of Christine Mecham at ¶ 16.

73. Ms. Mecham was not in Arkansas in June or July of 2008. See Exhibit 1, Affidavit of Christine Mecham at ¶ 18.

74. Ms. Mecham did not sign the change of beneficiary forms, and she did not request that anyone, including Mr. Henderson, sign Mr. Henderson's name on those forms. See Exhibit 1, Affidavit of Christine Mecham at ¶ 19.

75. At no time did Ms. Mecham ask, suggest, imply, coerce, encourage, or discourage Mr. Henderson to do anything with his property, including his life insurance. See Exhibit 1, Affidavit of Christine Mecham at ¶ 30.

76. Although Mr. Webb contends that the change of beneficiary forms were not signed by Mr. Henderson, he has no evidence regarding who signed the forms or whether the forms were signed at Mr. Henderson's request. See Exhibit 2, Deposition of Gail Williams, at p. 82, lines 10-21; Exhibit 3, Deposition of Ryan Webb, at p. 45, lines 10-14.

Respectfully submitted,

By: /s/ Clayborne S. Stone

Clayborne S. Stone, Ark. Bar No. 2003102
Alex T. Gray, Ark. Bar No. 2008127
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: 501-688-8886
Fax: 501-918-7886
Email: cstone@mwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2013, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

James Melton Sayes
Matthews, Sanders & Sayes
825 West Third Street
Little Rock, AR 72201
news@msslawfirm.com

*Attorneys for Shelter Insurance Company*

Casey P. Castleberry
Tom Thompson
Murphy, Thompson, Arnold, Skinner & Castleberry
P.O. Box 2595
Batesville, AR 72503-2595
Caseycastleberry2003@yahoo.com
Aftomt2001@yahoo.com

*Attorneys for Ryan Webb*

/s/ Clayborne S. Stone